# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS M. PEREZ,<br><br>  Plaintiff,<br><br>  v.<br><br>AZUSA POLICE DEPARTMENT, et al.,<br><br>  Defendants. | Case No. 2:18-cv-08535-ODW (AFM)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |

On October 4, 2018, plaintiff filed a document, which this Court construed as a *pro se* civil rights Complaint. Plaintiff subsequently was granted leave to proceed *in forma pauperis*. In accordance with the mandate of the Prison Litigation Reform Act of 1995 ("PLRA"), the Court screened plaintiff's Complaint prior to ordering service and found that it did not comply with Rule 8 because it failed to state a short and plain statement of each claim that was sufficient to give a defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. Also, the allegations in plaintiff's Complaint appeared insufficient to state any claim upon which relief may be granted. (ECF No. 9 at 2.) Consequently, the Court dismissed plaintiff's Complaint with leave to amend.

| | |
|---|---|
| 1 | On December 10, 2018, plaintiff filed a First Amended Complaint which is now the operative pleading. (ECF No. 14.) Plaintiff, a pretrial detainee in the Los Angeles County Men's Central Jail, lists nine John and Jane Doe defendants, all employees of the Azusa Police Department. Plaintiff's claims arise from his arrest and detention on April 19, 2018, by the Azusa Police Department. |

In accordance with the mandate of the Prison Litigation Reform Act of 1995 ("PLRA"), the Court has screened plaintiff's First Amended Complaint ("FAC") prior to ordering service for the purpose of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

The Court's screening of the pleading under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (in determining whether a complaint should be dismissed under the PLRA, courts apply the standard of Fed. R. Civ. P. 12(b)(6)).

Further, with respect to a plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. ... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." (internal citation omitted)).

The Court is mindful that, because plaintiff is appearing *pro se*, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). It is particularly important in a civil rights case filed by a *pro se* inmate to attempt to ascertain plaintiff's claims to protect his access to the courts. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (the rule that courts liberally construe filings by *pro se* litigants, especially in civil rights cases filed by inmates, "relieves *pro se* litigants from the strict application of procedural rules"); *Pouncil v. Tilton*, 704 F.3d 568, 575-76 (9th Cir. 2012) (the rule of liberal construction "protects the rights of *pro se* litigants to self-representation and meaningful access to the courts"); *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the benefit of any doubt' in ascertaining what claims he 'raised in his complaint'") (alteration in original). A court may not dismiss a claim merely because a *pro se* plaintiff has failed to set forth a complete legal theory supporting the claim alleged. *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346,(2014) (per curiam) (noting that the Fed. Rules of Civ. Proc. "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

That said, the Supreme Court has made it clear that the Court has "no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Further, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

After careful review of plaintiff's First Amended Complaint under the foregoing standards, the Court finds that, as discussed in more detail below, the Complaint is deficient and must be dismissed with leave to amend. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a *pro se* litigant must be

given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

**If plaintiff desires to pursue this action, he is ORDERED to file a Second Amended Complaint no later than thirty (30) days after the date of this Order, remedying the deficiencies discussed below.** Further, plaintiff is admonished that, if he fails to timely file a Second Amended Complaint ("SAC"), or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that this action be dismissed without further leave to amend.[1]

## DISCUSSION

**A. RULE 8**

In order to proceed, plaintiff's FAC must comply with Federal Rule of Civil Procedure 8(a) and 8(d)(1). Rule 8(a) states:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) **a short and plain statement of the claim showing that the pleader is entitled to relief**; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (emphasis added). Rule 8(d)(1) provides: "Each allegation must be **simple, concise, and direct**. No technical form is required." (emphasis added). Although the Court must construe a *pro se* plaintiff's pleadings liberally, a plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is

---

[1] Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a claim should not be seen as dispositive of that claim. Accordingly, although this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action. However, if you decide to pursue a claim in a Second Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately may submit to the assigned District Judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the District Judge as provided in the Local Rules Governing Duties of Magistrate Judges.

sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. United States Department of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (complaint must give defendants fair notice of the claims against them). If a plaintiff fails to clearly and concisely set forth allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the complaint fails to comply with Rule 8. *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). Moreover, failure to comply with Rule 8 constitutes an independent basis for dismissal of a complaint that applies even if the claims in a complaint are not found to be wholly without merit. *See McHenry*, 84 F.3d at 1179; *Nevijel*, 651 F.2d at 673.

In Claim I, plaintiff asserts that defendants engaged in cruel and unusual punishment and excessive force and harassment in violation of the Fifth, Eighth, and Fourteenth Amendments. (ECF No. 14 at 7.) In support of his claim, plaintiff alleges that: (1) while plaintiff was handcuffed, John Doe 6[2] struck plaintiff from behind, slammed plaintiff to the floor, and struck plaintiff while plaintiff was lying on the floor (*Id*. at 7 ¶ 1); (2) while plaintiff was handcuffed and in leg restraints, JD-8 and JD-9 pushed, struck, and verbally harassed him in the hallway at Azusa Police Station (*Id*. at 7-8 ¶ 2); (3) while plaintiff was in handcuffs and leg restraints, JD-8 and JD-9 "dragged [p]laintiff down hallway while pushing, striking and threatening" him (*Id*. at 22 ¶ 48); (4) while plaintiff's pants were down (had fallen down), exposing his underwear, JD-8 and JD-9 subjected him to booking, i.e., he was photographed, fingerprinted, and questioned, in the presence of female officer, JD-4 (*Id*. at 8 ¶ 3); (5) while plaintiff was handcuffed, JD-6 kept restroom door open, which would have exposed plaintiff to hospital staff and patients while plaintiff used the restroom (*Id*.

---

[2] Hereinafter John and Jane Does are referred to as JD-1, JD-2, JD-3, JD-4, etc.

at 8 ¶ 4), "[p]laintiff felt humiliated and degraded and denied the restroom" (*Id*. at 18-19 ¶ 29); (6) JD-6 applied leg restraints "so tight the leg restraints cut off blood circulation" (*Id*. at 8 ¶ 5); (7) JD-3, JD-4, and JD-5 observed plaintiff striking his head against the concrete wall of the holding cell, did nothing to protect him from self-harm, rather, they "verbally harassed him" (*Id*. at 9 ¶ 6; 17 ¶¶ 17-19).

In Claim II, plaintiff asserts that defendants violated his First Amendment rights when they denied his request to use the phone to contact his "lawyer, family, and his primary physician." (*Id*. at 10 ¶ 9.) In support of his claim, plaintiff alleges that: (1) "plaintiff requested a phone call to contact family, lawyer, and or Doctor from Defendants" (*Id*. at 15 ¶ 9); (2) JD-3, JD-4, JD-6, JD-8, and JD-9 "denied plaintiff's request." (*Id*. at 10 ¶ 9; 15 ¶ 10; 22 ¶ 47; 22-23 ¶¶ 53-54.)

In Claim III, plaintiff asserts that defendants violated his right to medical care in violation of the Fourteenth Amendment. (*Id*. at 10-11 ¶ 10.) In support of his claim, plaintiff alleges that: (1) plaintiff notified all the defendants of his "diagnosed mental illness" and requested medical attention for said illness (*Id.* at 11 ¶ 11; 15 ¶ 11); (2) all defendants denied plaintiff's request for medical attention; (3) after plaintiff sustained physical injury at the hands of the defendants at the hospital and Azusa Police Station, he requested medical attention; (4) JD-3, JD-4, JD-5, JD-7, JD-8, and JD-9 denied plaintiff's requests for medical attention. (*Id*. at 15-16 ¶¶ 11-12; 21 ¶¶ 40-41; 22-23 ¶¶ 53-54.)

In Claim IV, plaintiff asserts that defendants discriminated against him based on his disability in violation of the Fourteenth Amendment and the Americans with Disabilities Act, specifically, 42 U.S.C. § 12101. In support of his claim, plaintiff alleges that he was "denied fair treatment of protection and Medical Care, (sic) including necessary psychiatric care." (*Id*. 12 at ¶ 13.)

Based upon the foregoing, the court finds that plaintiff has set forth a short and plain statement of each such claim against defendants JD-3, JD-4, JD-5, JD-6, JD-7, JD-8, and JD-9 in a way that is sufficient to provide each defendant with notice of

the factual basis for any such claim. **However, as to defendants JD-1 and JD-2, plaintiff has not met the pleading standard required under Rule 8.**

B.  **RULE 10**

Plaintiff must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California. *See, e.g., Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ("pro se litigants are not excused from following court rules"). The Court notes that plaintiff has failed to comply with Fed. R. Civ. P. 10, which requires that the caption of a pleading include all defendants listed in the body of the pleading. Here, the FAC caption lists only the Azusa Police Department as a defendant. **Should plaintiff file a Second Amended Complaint, even though the defendants' names are not known, plaintiff must list each John Doe and Jane Doe in the caption.**

C.  **EXCESSIVE FORCE**

It appears to the Court that the factual allegations in the FAC pertain to incidents that took place while plaintiff was detained by the Azusa Police Department. Accordingly, any claim for the excessive use of force by a police officer would arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) ("We have said that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation marks omitted); *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (if plaintiff "had not been convicted of a crime, but had only been arrested, [then] his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment"); *see also Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied on in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").

"[T]o prove an excessive force claim, a pretrial detainee must show ... only that the officers' use of ... force was objectively unreasonable," not "that the officers were subjectively aware that their use of force was unreasonable." *Kingsley*, 135 S. Ct. at 2470 (emphasis in original). As shown above, plaintiff purports to be raising several claims of cruel and unusual punishment or excessive force. Because it appears that plaintiff was a detainee at the time the incidents alleged in the FAC took place, the cruel and unusual punishment clause of the Eighth Amendment does not apply to his claims. However, as discussed above, plaintiff may bring an excessive force claim under the due process clause of the Fourteenth Amendment. Here, plaintiff has pleaded sufficient allegations to state such a claim.

The Supreme Court in *Kingsley* held that, "to prove an excessive force claim, a pretrial detainee must show ... only that the officers' use of ... force was objectively unreasonable," and not "that the officers were subjectively aware that their use of force was unreasonable." *Kingsley*, 135 S. Ct. at 2470. Drawing all inferences in plaintiff's favor, the FAC shows that plaintiff was not actively resisting, no need existed for the use of any force, and no security problem or threat needed to be addressed at the time that force was used by JD-6, JD-8, and JD-9 against plaintiff. Accordingly, under such circumstances, it was objectively unreasonable to strike the handcuffed plaintiff from behind, slam him to the floor, and continue to strike plaintiff while he was lying on the floor. (ECF No. 14 at 7-8 ¶¶ 1-2; 22 ¶ 48.)

In the Ninth Circuit, tight handcuffing can constitute excessive force. *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000). Here, plaintiff alleges that JD-6 applied handcuffs so tightly, plaintiff's "blood circulation was affected." (ECF No. 14 at 9 ¶ 7.) Plaintiff further alleges that JD-6 denied plaintiff's request that the handcuffs be loosened. (*Id.* at 17 ¶¶ 20, 21.) The context of plaintiff's FAC indicates that plaintiff was handcuffed and in leg restraints, which, he states, also cut off his blood circulation, for an extended period

of time, to wit, he alleges he was in handcuffs at the police station, while being transferred to the hospital, at the hospital, and when he was taken-down by JD-6; he was handcuffed and in leg restraints at the hospital, while being transferred from the hospital, during the booking process, and in the holding cell.[3] (*Id.* at 7 ¶ 1; 8 ¶¶ 2-4; 9 ¶ 7; 17 ¶¶ 20-21, 23; 18-22 ¶¶ 26, 29, 32-36, 45-48, 52.)

"It is clearly established that 'overly tight handcuffing can constitute excessive force.'" *Thompson v. Lake*, 607 F. App'x 624, 625 (9th Cir. 2015) (quoting *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *see also Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003) (holding that "to place and keep [a person] in handcuffs that were so tight that they caused her unnecessary pain violated her Fourth Amendment right to be free from an unreasonable seizure"). Even assuming plaintiff was required to complain that the handcuffs were too tight, his request that police loosen the handcuffs was sufficient to satisfy this requirement. *See Wall*, 364 F.3d at 1109-10, 1112. Also, to state a claim, plaintiff is not required to show that the handcuffs caused visible physical injury; it is enough that the handcuffs caused him unnecessary pain. *See Meredith*, 342 F.3d at 1060, 1062-63. Accordingly, plaintiff has stated a claim for excessive force due to "overly tight handcuffing."

As discussed above, the Court finds that, taking the facts in the light most favorable to plaintiff, plaintiff has sufficiently alleged claims for excessive force.

**D.  DENIAL OF ACCESS TO MEDICAL CARE AND FAILURE TO PROTECT**

The due process clause of the Fourteenth Amendment guarantees that pretrial detainees receive constitutionally adequate medical and mental health care. *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), and *opinion reinstated*, 658 F.3d 897 (9th Cir. 2011).

---

[3] Plaintiff was not in handcuffs the first time he was put into the holding cell. (*Id.* at 14 ¶ 3.)

In the Ninth Circuit, the standard governing Fourteenth Amendment failure-to-protect claims by pretrial detainees requires courts to analyze such claims under a purely objective standard. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1068-1071 (9th Cir. 2016). "Under *Castro*, we ask whether there was "a substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the officer did not take, thus causing the injury that the plaintiff suffered." *Horton v. City of Santa Maria*, 2019 U.S. App. LEXIS 3313 (9th Cir. 2019) (quoting *Castro*, 833 F.3d at 1070).

Here, plaintiff alleges that defendants watched while plaintiff repeatedly hit his head against the cement wall of the holding cell. He alleges that they took no action to protect him from this self-harm, rather, they "verbally harassed him." (ECF No. 15 at 9 ¶ 6; 16 ¶ 15-16.) Plaintiff also alleges that on multiple occasions during his detainment he requested medical attention but was denied the same. Plaintiff's FAC shows that defendants transported plaintiff to "Foothill Presbyterian Hospital in Glendora[,] California" where he was admitted. (*Id*. at 17-18 ¶¶ 22-24.) However, it also appears that plaintiff was not seen by a physician. Instead, plaintiff was returned to the police station's holding cell. (*Id*. at 19-21 ¶¶ 32-45.)

Plaintiff alleges that the officers' actions were intentional in that the officers removed him from the hospital before he was seen by a physician. Plaintiff further alleges that a substantial risk of serious harm existed in that plaintiff notified the officers of his medical needs, he repeatedly requested medical care, and he had sustained physical injury by his own hands and at the hands of the officers. Finally, plaintiff alleges that the risk of harm "could have been eliminated through reasonable and available measures that the officers did not take" in that the officers removed him from the hospital when he could have been subdued using alternative means, in other words, something less than taking him down, binding him, and returning him

to the Police Station.[4] Accordingly, the Court finds that, taking the facts in the light most favorable to plaintiff, plaintiff has sufficiently alleged claims for denial of medical care and failure to protect.

### E. DENIAL OF ACCESS TO TELEPHONE

As noted above, plaintiff asserts that defendants violated his First Amendment rights when they denied his request to use the phone to contact his "lawyer, family, and his primary physician." (*Id.* at 10 ¶ 9.) In support of his claim, plaintiff alleges that: (1) "plaintiff requested a phone call to contact family, lawyer, and or Doctor from Defendants" (*Id.* at 15 ¶ 9); and (2) JD-3, JD-4, JD-6, JD-8, and JD-9 "denied plaintiff's request." (*Id.* at 10 ¶ 9; 15 ¶ 10; 22 ¶ 47; 22-23 ¶¶ 53-54.)

In the Ninth Circuit, restrictions placed on a pretrial detainee's ability to "communicate with persons outside prison walls" may violate the First Amendment. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). Individuals who have been detained have a constitutional right to meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 822 (1977) (prisoners); *Hydrick v. Hunter,* 500 F.3d 978, 990 (9th Cir. 2007) (civil detainees); *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995) ("right of access [to the courts] is guaranteed to people institutionalized in a state mental hospital.")

Plaintiff alleges that his requests to phone his family, his physician, and his attorney were denied throughout his detainment by the Azusa Police Department. Accordingly, the Court finds that, taking the facts in the light most favorable to plaintiff, plaintiff has sufficiently alleged claims for denial of communication and denial of meaningful access to the courts.

### F. AMERICANS WITH DISABILITIES ACT

Title II of the Americans with Disabilities Act ("ADA") applies to State and local government entities. Subtitle A of Title II protects qualified individuals with

---

[4] Plaintiff remained handcuffed at the emergency room. (ECF No. 14 at 17-19 ¶¶ 23, 26, 28, 29.) "Plaintiff states his height currently is 5'2 and weight 135 lbs." (ECF No. 14 at 20 ¶ 38.)

disabilities from discrimination on the basis of disability in services, programs, and activities provided by State and local government entities. To state a claim for a violation of Title II of the ADA, a plaintiff must show that he is (1) a "qualified individual with a disability" who has been (2) "denied the benefits of the services, programs, or activities of a public entity" and, (3) that the denial was based on his disability. 42 U.S.C. § 12132(a). Under the ADA, an individual is disabled if that individual "(1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Deppe v. United Airlines,* 217 F.3d 1262, 1265 (9th Cir. 2000); *see also* 42 U.S.C. § 12102(2).

Plaintiff alleges that he was discriminated against for having a mental impairment, that he was denied "fair treatment of protection" and he was denied medical and psychiatric care. To proceed, a complaint must include, "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 570 (2007)).

The context of plaintiff's FAC shows that plaintiff believes he was treated unfairly by Azusa Police Department personnel because he has been diagnosed with mental illnesses. **However, plaintiff's FAC does not contain sufficient factual allegations to state an ADA claim.**

### G.  DEFENDANTS JD-1 and JD-2

Plaintiff has named JD-1 and JD-2, Chief of Police and Captain of the Azusa Police Department respectively, in their individual and official capacities. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id*. at 166. Accordingly, plaintiff's claim against an officer in his or her official capacity is the same as a claim against his or her employer.

To the extent that plaintiff may be purporting to state a claim against the Azusa Police Department pursuant to *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court in *Monell* held that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 563 U.S. 51 (2011) ("local governments are responsible only for their own illegal acts").

In order to state a claim arising from the execution of an entity's policy or custom, plaintiff must set forth factual allegations to show that the execution of a specific policy, ordinance, regulation, custom or the like of the police department was the "actionable cause" of any alleged constitutional violation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but-for and proximate causation").

Here, plaintiff alleges that, while he was handcuffed, he was struck from behind, slammed to the floor, and repeatedly struck while on the floor. (ECF No. 14 at 7 ¶ 1.) Plaintiff further alleges that certain defendants pushed, struck, and verbally harassed him (*Id*. at 7-8 ¶ 2); that certain defendants dragged him down a hallway while "pushing, striking and threatening" him (*Id*. at 22 ¶ 48); that he felt "humiliated and degraded" (*Id*. at 18-19 ¶ 29); that certain defendants failed to protect him from self-harm (*Id*. at 9 ¶ 6); and that he believed he was being discriminated against because of his disability (*Id*. at 12 ¶ 13).

It is not clear, however, that the alleged actions or inactions of the defendants were in accordance with any specific police department policy or custom. For example, although plaintiff alleges that police department personnel refused to intervene to protect him, there are no allegations that this practice was consistently

and frequently employed and amounted to a specific departmental policy or custom that was the "actionable cause" of a specific constitutional violation that plaintiff suffered. *See Tsao*, 698 F.3d at 1146. Plaintiff also fails to set forth specific factual allegations showing a "pattern" of conduct by the Azusa Police Department. An "official capacity" claim may not be premised on an isolated or sporadic incident. *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). **Accordingly, the Court finds that plaintiff has failed to state a claim against JD-1 and JD-2 in their official capacity.**

In the Ninth Circuit, a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). As the Court explained:

> [A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.
>
> The requisite causal connection can be established ... by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.

*Starr*, 652 F.3d at 1207-08 (internal citations omitted).

As set forth above, in order to establish a failure-to-protect claim, a detainee must show that an officer's action or inaction was "intentional" and that, objectively, a "substantial risk of serious harm" existed that "could have been eliminated through reasonable and available measures that the officer did not take." *Castro,* 833 F.3d at 1070-71. Here, plaintiff fails to set forth any specific factual allegations that JD-1 or JD-2 set into motion any series of acts by others, or that JD-1 or JD-2 knowingly refused to stop others actions that they "knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 Accordingly, plaintiff has failed to state a claim against JD-1 or JD-2 for supervisory liability or failure to protect.

In order to state a federal civil rights claim against a particular defendant, plaintiff must allege that a specific defendant, while acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Nowhere in his FAC does plaintiff allege any facts that show JD-1 or JD-2 engaged in any affirmative act. Plaintiff's references to JD-1 and JD-2 are conclusory. For example, in Claim I, plaintiff alleges that all defendants, except JD-7, used excessive force against plaintiff. Plaintiff's facts in support of his excessive force claim allege that JD-6 struck plaintiff from behind and slammed him to the ground and that JD-8 and JD-9 pushed and struck plaintiff while he was handcuffed and in leg restraints. **Accordingly, the Court finds that plaintiff has failed to sufficiently allege any claim against JD-1 or JD-2 in each defendant's individual capacity for the use of excessive force.**

|   |   |
|---|---|
| 1 | Similarly, plaintiff names JD-1 and JD-2 in his claim that defendants refused |
| 2 | his request to contact his attorney. However, in his supporting facts plaintiff states |
| 3 | that it was JD-3, JD-4, JD-6, JD-8, and JD-9 whom he asked permission to make the |
| 4 | phone calls and, who specifically denied his request. Under his claims for denial of |
| 5 | medical care and discrimination, plaintiff again included JD-1 and JD-2 in his |
| 6 | statement of claim, but alleges no facts that either specifically denied him medical |
| 7 | care or discriminated against him. **Accordingly, the Court finds that plaintiff has** |
| 8 | **failed to sufficiently allege any claim against JD-1 or JD-2 in each defendant's** |
| 9 | **individual capacity.** |

## H. REQUEST FOR RELIEF

The Court notes that plaintiff seeks an injunction ordering defendants to "cease their physical violence and threats towards [p]laintiff [and] other detainees/ arrestees." (ECF No. 14 at 24 ¶ A.) To receive injunctive relief, plaintiff must demonstrate that a credible threat exists that he will again be subjected to the specific injury for which he seeks relief. *See Kolendar v. Lawson*, 461 U.S. 352, 355 n.3 (1983). A reasonable showing of a "sufficient likelihood" that plaintiff will again be injured is necessary. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm. *See O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). **Here, plaintiff fails to set forth any factual allegations to show the existence of a credible threat that he will again be subjected to "physical violence and threats" by any Azusa Police Department employee and therefore has failed to allege a sufficient basis for his injunctive relief claim.**

\*\*\*\*\*\*\*\*\*\*\*\*

**If plaintiff still desires to pursue this action, he is ORDERED to file a Second Amended Complaint no later than thirty (30) days after the date of this Order, remedying the pleading deficiencies discussed above.** The Second Amended Complaint should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the original Complaint, or any other pleading, attachment, or document.

The clerk is directed to send plaintiff a blank Central District civil rights complaint form, which plaintiff is encouraged to utilize. Plaintiff is admonished that he must sign and date the civil rights complaint form, and he must use the space provided in the form to set forth all of the claims that he wishes to assert in a Second Amended Complaint.

In addition, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

**Plaintiff is further admonished that, if he fails to timely file a Second Amended Complaint, or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed on the grounds set forth above and for failure to diligently prosecute.**

**IT IS SO ORDERED.**

DATED: 3/1/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

Attachments: Civil Rights Complaint (CV-066)
Notice of Dismissal (CV-009)